**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MEDIA ALLIANCE, INC., and
STEPHEN C. PIERCE,

                                        Plaintiffs,

                - v -                                            Civ. No. 1:09-CV-659
                                                                        (LEK/RFT)

ROBERT MIRCH, *Commissioner of Public Works*
*for the City of Troy, individually and in his official*
*capacity*, and CITY OF TROY,

                                        Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER

Plaintiffs seek leave to amend their Complaint in order for the Plaintiff Stephen

C. Pierce to seek compensatory damages, the Plaintiffs to pursue punitive damages

against Defendant Mirch, and to plead a *Monell* claim[1] against the City of Troy.  Dkt.

No. 24, Mot. to Amend Compl., dated June 4, 2010.  The Defendants oppose the

Motion.  Dkt. No. 25, John B. Casey, Esq. Aff., June 18, 2010.  For the following

reasons, the Motion is **granted**.

## I.  THE COMPLAINT

Although the Court assumes the parties' familiarity with the facts of this

litigation, a brief recitation is warranted.

---

[1]  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see infra* Part II.A.2
at pp. 12-14.

In March 2008, the Plaintiff offered to display artist Wafaa Bilal's digital work, "Virtual Jihadi" at the Sanctuary of Independent Media.  Defendant Mirch, who was also the Commissioner of Public Works for the City of Troy, issued a press release and appeared on a radio talk show denouncing Bilal's work and requesting that the Plaintiffs retreat from showing this exhibit and subsequently participated in a public protest against the display.  Upon the opening of the display, Troy's Department of Public Works performed an unscheduled inspection of the Sanctuary's building, issued a citation identifying code violations, and directed that there should be no assembly for any reason until the alleged code violations are corrected.  *See generally* Dkt. No. 1, Compl.

Plaintiffs allege that Defendants' retaliatory use of their law enforcement authority violated Plaintiffs' fundamental rights to free speech, assembly, due process and equal protection under the First, Fifth, and Fourteenth Amendments of the United States Constitution as well as provisions of the New York State Constitution.  *Id*. Defendants dispute Plaintiffs' allegations and assert several affirmative defenses and a counterclaim for reasonable attorney fees, pursuant to 42 U.S.C. § 1988.  Dkt. No. 8, Ans.

There are three primary bases for Plaintiffs' Motion to Amend.  Initially, Plaintiffs demanded a declaratory judgment, permanent injunctive relief, nominal

damages, and reasonable attorney fees.  Compl. at Wherefore Clause.  Apparently,

upon further evaluation of Plaintiff Pierce's deposition on June 24, 2008, at which he

advised the Defendants that he contemplated seeking psychiatric or psychological

treatment, suffered emotional and mental distress, elevated blood pressure, and

further adding by the proposed Amended Complaint that he suffered headaches, stress,

and insomnia, he wishes to modify his quest for damages from nominal to

compensatory.  Dkt. No. 24, Proposed Am. Compl. at ¶¶ 10, 16, 53, Wherefore

Clause, & Ex. B, Pierce's Dep., dated June 24, 2008, at pp. 167-68.  Next, Plaintiffs

propose allegations that an award of punitive damages against Defendant Mirch may

be warranted.   In this respect, Plaintiffs allege that Mirch, in his capacity as

Commissioner of Public Works, was personally involved and orchestrated the

issuance of the citation with the intent of preventing the public from viewing Bilal's

exhibit and its message, and acted recklessly and with callous indifference to the

Plaintiffs' constitutional rights.  For these reasons, Plaintiffs wish to pursue punitive

damages.  *Id.*, Proposed Am. Compl. at ¶¶ 10, 16, 36, 42, 54, & Wherefore Clause.

Lastly, Plaintiffs assert that the City of Troy has a custom and policy of using code

enforcement to stifle opposing political viewpoints, and Defendant Mirch, as

Commissioner of Public Works, had final policy making authority to circumscribe

Plaintiffs' constitutional rights by directing the issuance of the citation and closure of

the building as a place of public assembly.  *Id*. at ¶¶ 49-51.

## II.  DISCUSSION

### A.  Motion To Amend Standard

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires."  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).  District courts are vested with broad discretion to grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).  "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial."  *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997) (citing *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted).  This requires the non-movant to "do more than simply claim to be prejudiced."  *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185

(E.D. Pa. 1991).

Here, Defendants complain that the proposed Amended Complaint should be denied on the grounds that it is untimely, thus causing them to be prejudiced, and that it is futile.

### 1.  Untimely and Prejudice

In determining what constitutes prejudice from the amendment of a pleading, courts within the Second Circuit generally consider "whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Courts will further consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading.  *See, e.g.*, *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986); *Tokio Marine & Fire Ins. Co. v. Employers Ins*., 786 F.2d 101, 103 (2d Cir. 1986).

A delay in asserting either a new cause of action or an affirmative defense for a significant period of time may result in a finding of prejudice.  *United States v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248 (2d Cir. 1989).

Where the motion to amend is made after an "inordinate delay," a court has the discretion to deny leave of that amendment. *Travelers Indem. Co. v. Gosline*, 2003 WL 21230376, at *3 (N.D.N.Y. May 27, 2003) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)). In order to deny a motion to amend on the ground of delay, said ground must be accompanied by either bad faith or undue prejudice. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also United States v. Cont'l Illinois Nat'l Bank*, 899 F.2d at 1254 (delay alone is an insufficient ground to deny a motion to amend). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party" to show undue prejudice. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) ("The proper standard is one that balances the length of the delay against the resulting prejudice."). For example, if said amendment causes an undue prejudice by requiring additional discovery or unnecessarily complicates the litigation, the motion to amend may be denied. *Kovian v. Fulton County Nat'l Bank and Trust Co.*, 1992 WL 106814, at *2 (N.D.N.Y. May 13, 1992). And, as a reminder, "[t]he party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." *Trudeau v. New York State Consumer Prot. Bd.*, 2006 WL 1229018, at *4 (N.D.N.Y. May 4, 2006) (quoting *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997)).

Defendants posit that Plaintiffs unduly delayed in bringing this Motion.  In support of their charge that the proposed amendments are inordinately tardy, Defendants highlight that the modifications are being alleged two years after Plaintiffs filed a notice of claim and more than a year after the filing of the Complaint.  Dkt. No. 25 at ¶¶ 4-7.   Questioning Plaintiffs' motive for the proposed amendments, Defendants remark that initially Plaintiffs only wanted to vindicate their civil rights and protect their right to freedom of expression, but now the litigation has been converted into a "shake down."  *Id*. at ¶¶ 7 & 8.  And, they argued that because of the delay, consequently they have been prejudiced.

The Court could not disagree more.  The notion that there is even a delay is relatively oblique.  Evidently, Defendants did not take into account this case's brief litigation history.  On October 12, 2009, the parties submitted a joint civil case management plan proposing a June 11, 2010 deadline for both joining new parties and amending pleadings.  Dkt. No. 9.  After the Rule 16 Conference, which was held on November 4, 2009, the Court issued a Uniform Pretrial Scheduling Order, which, *inter alia*, set March 5, 2010, as the date to amend pleadings.  Dkt. No. 13, Sch. Order, dated Nov. 4, 2009.  Because Plaintiffs' Attorneys had shifted the litigation responsibility from one attorney to another, Plaintiffs filed a Letter-Motion seeking to extend the March 5, 2010 deadline,  Dkt. No. 15, which was granted, Dkt. No. 17.

The revised deadline was May 14, 2010.  Dkt. No. 17.

On May 11, 2010, Plaintiffs filed a Motion to Amend their Complaint, Dkt. No. 18, without abiding by this District's Local Rule to meet and confer with their adversary and then with the Court.  N.D.N.Y.L.R. 7.1(b)(2).  Accordingly, that Motion was stricken from the case docket.  Dkt. No. 19.  Eventually, the Court convened a telephone conference, on the record, to discuss Plaintiffs' Application and a thorough discussion ensued.  Consequently, the Court granted Plaintiffs' Letter Request to file a motion to amend and further set a briefing schedule.  Dkt. No. 23, Text Order, dated May 27, 2010.  Within less than a week, Plaintiffs filed their Motion to Amend.  Dkt. No. 24.  The above chronology illuminates that Plaintiffs filed this Motion to Amend consistent with the parties' initial agreement and the subsequent adjustment to the Scheduling Order.  The Court finds that there is no inordinate delay in filing this Motion.

As to the element of prejudice, if any exist, it too is rather obscure.  The additional allegations are derived from the facts alleged in the Complaint.  Notwithstanding Plaintiffs initially limiting its quest for declaratory and injunctive relief, as well as nominal damages, Defendants can hardly claim surprise that Plaintiff Pierce may ultimately seek compensatory damages.  On June 8, 2008, approximately one year prior to filing the Complaint, Pierce was interrogated by Defendants during

a 50-H hearing regarding his emotional distress and damages.  Nor can they plead surprise that Plaintiff would contemplate a *Monell* claim, especially when considering Mirch's alleged conduct and his conceivable position as a final policy maker.  The only conceivable surprise, albeit a tenuous one at best, might be the claim for punitive damages.

Other than Defendants referring to the amendments as a "shakedown," there is no hint of bad faith.  The amendments do not cause an additional expenditure of resources nor do they complicate the case.  Considering that this litigation is at the midpoint of the pretrial litigation phase, any existing prejudice can be remedied by amending the Scheduling Order.  *See infra* Part II.B.  Hence, the filing of the Motion to Amend is neither dilatory nor prejudicial.

### 2. Futility

Next, the Defendants assert futility as a basis for denying this Motion.  The Second Circuit has stated that where futility is raised as an objection to the motion to amend, and

> [w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend. *See, e.g.*, *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230 (denial not abuse of discretion where amendment would be futile); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no merit in the Proposed amendments, leave to amend should be denied"); *Billard v. Rockwell International Corp.*, 683 F.2d 51, 57 (2d Cir.1982) (denial not abuse of discretion where plaintiff had had "access to full

discovery" in a related case).
*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

As futility is an appropriate basis for denying leave to amend, such denial should be contemplated within the standards necessary to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*). In that respect, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 1949 (citation omitted). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

In the scheme of things, Plaintiffs' proposed amendments are minimal since the original Complaint is already an ample thirteen-paged recital of the events.  In their pursuit of compensatory damages, Plaintiffs add a basically benign paragraph alleging Pierce's emotional suffering at the hands of the Defendants.  Nothing more would be required.  Regarding punitive damages, Plaintiffs allege additional facts that portray Defendant Mirch's actions in a more austere light.  By stating that Defendant Mirch

used his office as Commissioner of Public Works to secure a code enforcement violation notice that had the province of shutting down Plaintiffs' Sanctuary Hall in order to prevent the public from reviewing a very controversial piece of art, the proposed Amended Complaint casts Mirch's personal involvement as reckless and callously indifferent thereby chilling Plaintiffs' constitutional rights.

The sole purpose of punitive damages is for retribution and deterrence, and not compensation. *State Farm Mut. Auto. Ins., Co., v. Campbell*, 538 U.S. 408, 416 (2003). The Supreme Court has noted that punitive damages have long been awarded against individuals in § 1983 cases, but are not extended against a municipality. *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 259-60 (1981). The prevailing rules on punitive damages have been evolutionary, and said definition has included the reckless indifference to the rights of others. *Exxon Shipping Co. v. Baker*, _ U.S._, 128 S.Ct. 2605, 2621 (2008) (noting the availability of punitive damages for a defendant's conduct that is outrageous, owing to gross negligence, wilful, wanton, and recklessly indifferent to the rights of others, or behavior even more deplorable). Recklessness can be where an "actor knows, or has reason to know . . . of facts which create a high degree of risk of . . . harm to another, and deliberately proceed to act, or to fail to act, in conscious disregard of, or indifference to that risk." *Id*. at 2622 (citation omitted; alteration in the original).

-12-

Plaintiffs barely cross the finishing line in pleading facts supporting a claim for punitive damages. Some of those purported facts faintly resemble a mere recitation of the basic elements of punitive damages, which threadbare recital this Court may ignore. In our analysis though, the joinder of previously pled facts within the prism of reckless indifference to a party's constitutional rights gingerly moves the amendments over the threshold from the conceivable to the plausible, at least at this pleading stage.

The Court now turns to Plaintiffs' proposed *Monell* claim. A municipality may only be liable for a constitutional violation if the violation results from an official policy or custom either of the municipality's law makers or of those whose edicts or acts may be fairly said to represent official policy. *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 72 (2d Cir. 1992) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)). A plaintiff must demonstrate a causal link between the deprivation of a constitutional right and a specific municipal policy or custom. *Gibson v. City of New York*, 1998 WL 960303, at *4 (E.D.N.Y. Dec. 9, 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 691). A plaintiff must, however, assert facts that support a claim that he was a victim of acts undertaken pursuant to a practice equivalent to a *de facto* policy. Conclusory allegations are insufficient to state a claim under the civil rights statutes. *Faison v. Van Zandt*, 141 F.3d 1151 (2d Cir. 1998)

(unpublished decision) (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).

In establishing causation, a plaintiff need not show that "[t]he policy or custom used to anchor liability [was] contained in an explicitly adopted rule or regulation." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992); *see also Bostic v. City of Binghamton*, 2006 WL 2927145, at *5 (N.D.N.Y. Oct. 11, 2006) (quoting *Sorlucco*).   Municipal liability may be demonstrated if the deprivation resulted from:

> (1) an officially promulgated policy endorsed or ordered by the municipality, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986); (2) a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it, *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); (3) actions taken or decisions made by the municipal employee who, as a matter of state law, is responsible for establishing municipal policies with respect to the area in which the action is taken, *see Praprotnik,* at 129-30; or (4) the failure of the municipality to train its employees such that the failure rises to the level of deliberate indifference to the constitutional rights of others, *see City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

*Perfetto v. Erie County Water Auth.*, 2006 WL 1888556, at *6 (W.D.N.Y. July 7, 2006); *see also Sorlucco v. New York City Police Dep't*, 971 F.2d at 870-71; *Bostic v. City of Binghamton*, 2006 WL 2927145, at *5.

Here, Plaintiffs do not propose facts that allege the municipality endorsed an officially promulgated policy, or that a custom or practice was so widespread and pervasive that the municipality had constructive knowledge of it, or that the municipality failed to train its employees.  Rather, Plaintiffs allege that the City of Troy stifle political and

viewpoint expressions using "code enforcement as a guise, under the personal direction and knowledge of Defendant Mirch" who was acting in his official capacity as Commissioner of Public Works and had final authority to promulgate such policy. Dkt. No. 24-2, Proposed Am. Compl. at ¶¶ 49-51.

If a plaintiff complains that actions "were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved." *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000) (citations omitted); *see also Roe v. City of Waterbury*, 542 F.3d 31, 39 (2d Cir. 2008) (citing *Jeffes v. Barnes*). A municipal official "need not be a municipal policymaker for all purposes . . . [but] he must be 'responsible under state law for making policy *in that area* of the [municipality's] business.'" *Jeffes v. Barnes*, 208 F.3d at 57 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. at 123) (emphasis in original). The question of whether a municipal official has final policymaking authority is a legal question and must be determined on the basis of state law. *Id.* (citations omitted). Thus, the court must look to "relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989) (quoted in *Jeffes v. Barnes,* 208 F.3d at 57) (internal quotation marks omitted).

Liability may attach to the municipality if a deprivation was caused by Mirch

and he was "responsible for establishing final policy." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 108-09 (2d Cir. 2006) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. at 483, *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138, 140 (2dCir. 2008)).   If Mirch was indeed a final decisionmaker for the City of Troy, the municipality may be held liable. *See Pembaur v. City of Cincinnati*, 475 U.S. at 485; *see also Gronowski v. Spencer*, 424 F.3d 285, 296-97 (2d Cir. 2005) (finding that because the defendant was the policymaker of the city, the city could be held liable); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (stating that because the Suffolk County police commissioner had the "authority to set department-wide personnel policies[,]" there was a sufficient basis to hold the county liable for decisions made by the commissioner).   Weighing these instructions, once again, Plaintiffs allege sufficient facts to nudge the proposed *Monell* claim from the conceivable to the plausible and it passes muster under Rule 12(b)(6).

Lastly, the Court must address Defendants other assertions of futility. Defendants' Counsel's Affidavit recounts numerous factual disputes with Plaintiffs' proposed allegations. *See generally* Dkt. No. 25, Casey Aff.  Attorney Casey states, *inter alia*, that (1) Plaintiffs were informed of code violations relating back to 2007; (2) punitive damages should not be allowed against Mirch who was similarly expressing his personal opinions; and (3) Mirch had no personal involvement in either

*-16-*

the inspection of the Sanctuary or issuing the code violation notice.  First, and probably overlooked by Defendants, Casey's Affidavit is burdened by hearsay. Second, these and other facts may be more appropriately applicable when applying Federal Rule of Civil Procedure 56 summary judgment standard, rather than the Rule 12(b)(6) standard, which considers only whether causes of action have been adequately pled.  At this juncture, the Court is precluded from opining on these facts, since, in all likelihood, they will be the fulcrum for another dispositive motion or at trial.

Accordingly, and for the reasons stated above, the proposed Amended Complaint is not futile.

### B.  Scheduling Order

As stated above, to relieve the sting of prejudice, should any exist, and to give Defendants an opportunity to explore through discovery Plaintiffs' basis for a variety of damages and the crux of the *Monell* claim, the Court will amend the Scheduling Order as follows: (1) the discovery deadline is November 18, 2010; (2) the final day to file dispositive motions is January 13, 2011; (3) the trial ready date is April 20, 2011; and the trial date is May 15, 2011.

Therefore, Plaintiffs' Motion to Amend their Complaint, Dkt. No. 24, is **granted**, and the Scheduling Order, Dkt. No. 13, is **amended** as directed above.

*-17-*

**IT IS SO ORDERED**.

June 24, 2010
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge